**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Joseph E. ERWIN, Defendant–
Appellant.**

**No. 01–3917.**

United States Court of Appeals,
Sixth Circuit.

June 12, 2003.

Before COLE and SUHRHEINRICH, Circuit Judges, and CARR, District Judge.*

## OPINION

CARR, District Judge.

Defendant–Appellant Joseph E. Erwin pled guilty to mail fraud and wire fraud. He was sentenced to a term of 60 months' imprisonment for mail fraud, and a consecutive term of 60 months' imprisonment for wire fraud. Erwin appeals his sentencing enhancements for committing relevant conduct while on probation, using sophisticated means to commit the offense, and attempting to obstruct the administration of justice. For the reasons set forth below, we AFFIRM the sentence of the district court.

## I. BACKGROUND

Defendant was the branch manager and registered principal of a Columbus, Ohio, branch of Eisner Securities, Inc., a firm with its principal place of business in St. Louis, Mo. As branch manager, defendant had access to his clients' brokerage accounts and authority to manage those accounts. If a client requested distribution

---

* The Honorable James G. Carr, District Judge, United States District Court for the Northern District of Ohio, sitting by designation.

of account earnings, Erwin would request the distribution on behalf of the client, and Eisner would send a check to the address listed on the client's account.

Between May, 1997, and September, 2000, Erwin fraudulently obtained money from eleven clients' accounts. Erwin changed the addresses listed on these clients' accounts, so that distributions would be sent to Erwin. Erwin then requested distributions that were not authorized by the clients, and Eisner sent checks to the altered addresses. After Erwin received the unauthorized account distributions, he endorsed them in the names of the clients and deposited them into his own bank accounts. Erwin then manipulated his clients' account statements to conceal the withdrawals.

One of Erwin's clients noticed an unauthorized withdrawal and informed Eisner. On September 18, 2000, Eisner's CEO told Erwin that his brokerage license was suspended pending an investigation. On September 19, 2000, Eisner notified state and federal securities enforcement authorities of Erwin's apparent fraud. On September 20, 2000, an Eisner compliance officer caught Erwin removing the files of the eleven defrauded clients from his Columbus office.

In all, Erwin withdrew $2,804,987.80 from the eleven clients' accounts. Of that amount, $653,250.51 was wire-transferred between the accounts, and $2,187,647.29 was deposited into accounts for which Erwin was the signator. The latter amount was the collective loss to the victims.

Between January 16, 1996, and December 1, 1998, while Erwin was employed with Securities America, Inc., he made twelve unauthorized withdrawals from the accounts of the same victims as those he targeted while at Eisner. Those withdrawals were made by check or wire transfer and totaled $174,243.14. The money was deposited into accounts for which Erwin was the signator. Also during this period, Erwin was serving a year's probation, to which he had been sentenced on September 28, 1995, following conviction for driving under the influence of alcohol.

The indictment charged Erwin with mail fraud, in violation of 18 U.S.C. § 1341, and wire fraud, in violation of 18 U.S.C. § 1343. He pled guilty to both counts on February 9, 2001. At his sentencing hearing, on July 24, 2001, Erwin filed four objections to the presentence report, all of which were overruled.

On August 21, 2001, the District Judge sentenced Erwin to a term of imprisonment of 60 months on Count 1, and a consecutive term of 60 months on Count 2, followed by a three-year term of supervised release. He was ordered to pay restitution in the amount of $2,013,414.12. Erwin filed a timely notice of appeal on August 24, 2001.

## II. ANALYSIS

### A. Standard of Review

■ The Sixth Circuit reviews the district court's factual findings relating to sentencing for clear error. *United States v. Latouf*, 132 F.3d 320, 331 (6th Cir.1997). The government need only prove the facts used in sentencing determinations by a preponderance of the evidence. *United States v. Chambers*, 944 F.2d 1253, 1271 (6th Cir.1991). A finding of fact is clearly erroneous when, although there may be some evidence to support the finding, the reviewing court, upon review of the entire record, is left with the definite and firm conviction that a mistake has been committed. *Latouf*, 132 F.3d at 331. The Sixth Circuit reviews the district court's legal conclusions, and interpretations of the Sentencing Guidelines, de novo. *United*

*States v. Sanders,* 95 F.3d 449, 454 (6th Cir.1996).

## B. Committing Relevant Conduct On Probation

Erwin argues that the district court should not have enhanced his sentence for committing relevant conduct while on probation.

The Sentencing Guidelines require the district court to compute the defendant's criminal history category by assigning points for certain prior sentences. U.S. SENTENCING GUIDELINES MANUAL § 4A1.1. The district judge enhanced Erwin's sentence under § 4A1.1(d), which provides for a two-level enhancement "if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status. Application Note four of § 4A1.1 defines 'instant offense' as including 'any relevant conduct.' "[1]

On September 28, 1995, Erwin was sentenced to one year of probation after being arrested for driving under the influence. His probation term expired on September 26, 1996. The government argues that Erwin's withdrawals from the victims' Securities America accounts, which occurred between January 16, 1996, and December 1, 1998, are relevant conduct. Because some of those withdrawals occurred while Erwin was on probation, the government argues that the two-point enhancement should apply.

Erwin argues that the Securities America withdrawals are not relevant conduct, because he was not charged with those acts in the indictment. Because he was not on probation during his employment at Eisner, when he committed the acts for which he was convicted, he argues the two-level enhancement is not proper.

Whether a defendant's actions amount to relevant conduct under the sentencing guidelines is a question of fact subject to a clearly erroneous standard. *United States*

---

1. Section 1B1.3 defines "relevant conduct" as follows:

> (a) Chapters Two (Offense Conduct) and Three (Adjustments). Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:
> (1) (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in

> the course of attempting to avoid detection or responsibility for that offense;
> (2) solely with respect to offenses of a character for which §§ 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;
> (3) all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and
> (4) any other information specified in the applicable guideline.
> (b) Chapters Four (Criminal History and Criminal Livelihood) and Five (Determining the Sentence). Factors in Chapters Four and Five that establish the guideline range shall be determined on the basis of the conduct and information specified in the respective guidelines.
> U.S. SENTENCING GUIDELINES MANUAL § 1B1.3.

*v. Kappes*, 936 F.2d 227, 229 (6th Cir. 1991).

In this case, the two counts on which the defendant was convicted were grouped under § 3D1.2(d). (Presentence report, J.A. at 151). Under § 1B1.3(a)(2), therefore, "relevant conduct" includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant," § 1B1.3(a)(1)(A), involving "the same course of conduct or common scheme or plan as the offense of conviction." § 1B1.3(a)(2).

For two or more offenses to constitute part of a "common scheme or plan," they must be "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." U.S. SENTENCING GUIDELINES MANUAL § 1B1.3 n. 9(A). Offenses are part of the same course of conduct if they are "sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." § 1B1.3 n. 9(B).

This court should engage in the § 1B1.3 "relevant conduct" analysis when considering a defendant's criminal history under § 4A1.1(d), which contains the reference to "relevant conduct" in the application notes. *United States v. Kadunc*, Nos. 99–3908, 99–3909, 2001 WL 224002, at *6, 5 Fed. Appx. 419 (6th Cir. Feb. 27, 2001).

█ In this case, the Presentence Investigation report indicates that beginning on January 16, 1996, while Erwin was employed at Securities America, he made twelve unauthorized withdrawals. The district judge permissibly found that the offenses for which Erwin was indicted, and the offenses for which he was not indicted, were of a common scheme or plan, and thus were relevant conduct. They involved common victims, a common pur-

pose, and an identical modus operandi: while at both brokerage houses, Erwin diverted funds from his clients accounts to his own by changing his clients' mailing addresses and sending unauthorized requests for payments.

Erwin argues that the district court erroneously found that he was on probation when he engaged in the criminal conduct for which he was convicted. This was not the finding of the district judge, who said:

> The court's conclusion ... is further supported by the existence of some uncharged criminal conduct which was not included in the criminal history, but nevertheless is criminal conduct for which the defendant was not charged in this case, and the Court is referring to the defendant's fraudulent activities which resulted in the theft of substantial sums of money from the guardianship of his wife's mother.

(Sentencing hearing, J.A. at 76).

Moreover, it is irrelevant that the indictment did not charge Erwin with the relevant conduct. *See United States v. Robison*, 904 F.2d 365, 370 (6th Cir.1990) (citation omitted) ("Where there is an offense for which the defendant is not charged, evidence of such an offense can be included in the sentencing determination as 'relevant conduct' under section 1B1.3(a)(1), to be taken into account when determining the base offense level.").

The district court's sentence enhancement based on Erwin's relevant conduct while he was on probation was not erroneous and must be upheld.

## C. Using Sophisticated Means

The district court judge enhanced Erwin's sentence under U.S. SENTENCING

GUIDELINES MANUAL § 2F1.1(b)(6)(C),[2] which provided for a two-level enhancement if "sophisticated means" were used to commit the offense. Application Note eighteen of that section defines "sophisticated means" as "especially complex or more intricate offense conduct pertaining to the execution or concealment of an offense." Examples of "sophisticated means" include hiding assets or transactions through the use of fictitious entities, corporate shells, or offshore bank accounts. *See also* U.S. SENTENCING GUIDELINES MANUAL § 2B1.1, comment. n. 6 (same).

The Presentence Investigation report stated that Erwin's plan, involving altered account statements and 1099 forms, was so sophisticated that he deceived his clients for several years; one of the defrauded clients was Erwin's own accountant. Erwin defrauded his victims of more than $2.5 million, tracking what the victims' account balances would have been if he had not withdrawn the funds, estimating the interest that would have been earned on the withdrawn funds, and accounting for legitimate transactions he made on the accounts.

The district court used these facts to conclude that Erwin's methods were sophisticated enough to warrant the two-level enhancement:

> [T]he Court believes that the government has shown by at least a preponderance of the evidence that the offense conduct in this case was especially complex and especially intricate, and that it does qualify for the enhancement for sophisticated means.... He had to constantly monitor those account statements and perform sophisticated calculations in order to render falsified accounts to his clients and customers, calculating hypothetical balances that would have reflected their accounts had the fraud not occurred. This involved calculating dividends and interest on funds that no longer existed. It also involved the preparation of additional false documents such as false income tax forms, namely false 1099s. And the Court concludes, as I said just a moment ago, that all this amounts to conduct which is sophisticated within the meaning of the guidelines.

(Sentencing hearing, J.A. at 67–68).

■ The district court's factual findings show that the court's application of the enhancement for use of sophisticated means to commit a crime was not erroneous. *See also United States v. Humber,* 255 F.3d 1308, 1312–14 (11th Cir.2001) (following *United States v. Wiant,* 2001 WL 15633 (S.D.Ohio Jan.5, 2001)) (discussing the application of the sophisticated means enhancement). The sentence enhancement must be upheld.

### D. Obstruction of Justice

■ The district court enhanced Erwin's sentence under U.S. SENTENCING GUIDELINES MANUAL § 3C1.1, which provides for a two-level enhancement if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." Application Note four states that the enhancement applies where the defendant is found "destroying or concealing evidence that is material to an official investigation or judicial proceeding."

**2.** Effective November 1, 2001, § 2F1.1(b)(6)(C) was deleted by consolidation with U.S. SENTENCING GUIDELINES MANUAL § 2B1.1. The two-level enhancement for "sophisticated means" now may be found at § 2B1.1(b)(8)(C).

We have held that "the obstruction adjustment applies where a defendant engages in obstructive conduct with knowledge that he or she is the subject of an investigation or with the 'correct belief' that an investigation of the defendant is 'probably underway.'" *United States v. Brown,* 237 F.3d 625, 628 (citations omitted).

Here, Erwin was caught removing from his office the files material to the official investigation on September 20, 2000. Erwin argues that he should not receive an obstruction enhancement because he did not know that the investigation had begun.

On September 18, 2000, Eisner's CEO told Erwin that he was being investigated for fraud and that his brokerage license was suspended. He told Erwin to stay away from his office. At the sentencing hearing, the district judge heard the testimony of Glenda Bone, senior compliance officer for Eisner, who testified that after the September 18 conversation, Erwin would have known that the authorities had been contacted.

Erwin was the regulatory compliance officer for Eisner's Columbus office, so he would have known the procedure for investigating fraud allegations. Bone testified that she followed that procedure on September 19, 2000, when she contacted the Ohio Division of Securities, the Ohio Division of Insurance, and the National Association of Securities Dealers and told them that Eisner was investigating Erwin for suspected fraud. The NASD routinely informs the Securities and Exchange Commission of such investigations. The FBI also was investigating Erwin by September 20.

The district judge found that, based on Erwin's training and experience as an Eisner regulatory compliance officer, Erwin's September 18, 2000, conversation with Eisner's CEO caused him to believe that he was under investigation not only by Eisner, but by the NASD, and that the investigation would include reports to the SEC and to state authorities. Erwin's belief was correct.

Erwin argues that the investigation underway by September 20 did not constitute an "official investigation" for purposes of § 3C1.1. However, law enforcement and other government officers were investigating Erwin by September 20.

Finally, the district judge found that Erwin would have known that the files of his defrauded clients were relevant to the investigation. This made Erwin's attempt to remove them a willful attempt to obstruct the investigation.

When the defendant has properly objected to an obstruction of justice increase, the trial court should make specific factual findings which evince the defendant's willful impediment of justice. *United States v. Range,* 982 F.2d 196, 198 (6th Cir.1992). In *United States v. Jackson–Randolph,* 282 F.3d 369, 389 (6th Cir.2002), we modified the standard of review of the § 3C1.1 enhancement. The clear error standard is appropriate "for reviewing sentencing decisions under § 3C1.1 where the sole issue before the district court is a fact-bound application of the guideline provisions." *Id.* at 390.

In this case, the district judge made specific factual findings supporting the obstruction enhancement, and those findings were not clearly erroneous. The § 3C1.1 enhancement must be upheld.

## III. CONCLUSION

The district judge's imposition of sentence enhancements for committing relevant conduct on probation, for using sophisticated means to commit the offense,

883

and for attempting to obstruct the administration of justice are AFFIRMED.

