NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0500n.06

No. 18-6283

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Oct 01, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| WILMER CABALLERO-LAZO, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF KENTUCKY |
| Defendant-Appellant. | ) | |
| | ) | |

Before: MOORE, McKEAGUE, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. Wilmer Caballero-Lazo pleaded guilty to conspiracy to distribute more than 500 grams of a methamphetamine mixture. In calculating his Sentencing Guidelines range, the district court scored 3 criminal history points under U.S.S.G. § 4A1.1(a) for Caballero-Lazo's prior state court conviction for possession of cocaine, rejecting his claim that the cocaine conviction should not count as a "prior sentence" under § 4A1.1(a) because it was "part of" the methamphetamine distribution conspiracy. *See id.* § 4A1.2(a)(1). Caballero-Lazo challenges only the calculation of his criminal history score. We AFFIRM.

I.

In June 2017, Caballero-Lazo was indicted for conspiracy to distribute 500 grams or more of a methamphetamine mixture. He pleaded guilty, admitting to his involvement in a conspiracy to supply Kentucky drug dealers with large amounts of methamphetamine from May 2015 to September 2016. The Presentence Investigation Report (PSR) added 3 points to Caballero-Lazo's

criminal history score for a 2017 Georgia state court conviction for possession of cocaine. Caballero-Lazo had been arrested for that offense in February 2016, when police officers observed him holding a bag containing less than an ounce of cocaine in a public restroom.

Caballero-Lazo objected to his criminal history score, arguing that the cocaine conviction was "part of" the conspiracy to distribute methamphetamine, U.S.S.G. § 4A1.2(a)(1), because they were part of the "same course of conduct" or "common scheme or plan," *id.* § 1B1.3(a)(2). Accordingly, he argued, the cocaine conviction should not earn him additional criminal history points under § 4A1.1(a). The district court overruled his objection and sentenced Caballero-Lazo to 198 months' imprisonment, below the calculated Guidelines range of 210 months to 262 months. Caballero-Lazo appeals only the calculation of his criminal history score.

## II.

Caballero-Lazo's argument that the district court miscalculated his criminal history score is a challenge to the procedural reasonableness of his sentence. *See United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018) (stating that procedural reasonableness requires the court to "properly calculate the guidelines range"). We review for abuse of discretion, "keeping in mind that factual findings will stand unless clearly erroneous and legal conclusions will stand unless our fresh review leads to a contrary conclusion." *Id.* There is conflicting caselaw in this circuit about whether a district court's determination that "certain activity qualifies as 'relevant conduct' under § 1B1.3(a)(2)" constitutes a factual finding or a legal conclusion. *United States v. Shafer*, 199 F.3d 826, 830 (6th Cir. 1999). *Compare United States v. Erwin*, 67 F. App'x 876, 879–80 (6th Cir. 2003) ("Whether a defendant's actions amount to relevant conduct under the sentencing guidelines is a question of fact subject to a clearly erroneous standard."), *with United States v. Amerson*, 886 F.3d 568, 573 (6th Cir. 2018) ("Because a district court's relevant-conduct determination involves

the application of law to facts, we review de novo.").  But under either standard—clear error or de novo—we come to the same conclusion.  In this case, the district court did not err.

U.S.S.G. § 4A1.1(a) directs a district court to determine a defendant's criminal history score by adding points for prior sentences, including "3 points for each prior sentence of imprisonment exceeding one year and one month."  A "prior sentence" is "any sentence previously imposed upon adjudication of guilt . . . for conduct not part of the instant offense."  *Id.* § 4A1.2(a)(1).  "Conduct that is part of the instant offense means conduct that is relevant conduct to the instant offense under the provision of § 1B1.3 (Relevant Conduct)."  *Id.* § 4A1.2 cmt. n.1. For offenses, such as the one at issue here, for which U.S.S.G. § 3D1.2(d) would require grouping of multiple counts, "Relevant Conduct" is defined as "all acts . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction."  *Id.* § 1B1.3(a)(2).

Offenses are part of a common scheme or plan if they are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi."  *Id.* § 1B1.3 cmt. n.5(B)(i).  Offenses may "qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." *Id.* § 1B1.3 cmt. n.5(B)(ii).  Factors to consider in determining whether the offenses are part of the same course of conduct "include the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses."  *Id.*  "When one of the above factors is absent, a stronger presence of at least one of the other factors is required."  *Id.*  Caballero-Lazo bears the burden of proving that his prior offense and the instant offense are part of a common scheme or plan or the same course of conduct.  *See United States v. Horn*, 355 F.3d 610, 614 (6th Cir. 2004).

Caballero-Lazo offers several reasons why the cocaine possession offense and the methamphetamine distribution conspiracy were part of a "common scheme or plan" or "same course of conduct." He first argues that the purpose of both offenses was common or similar, *see* U.S.S.G. § 1B1.3 cmt. n.5(B)(i) & (ii)—that is, both involved the sale of narcotics. But our caselaw cautions against looking at the offenses in such broad, generic terms. *See Amerson*, 886 F.3d at 577 ("When considering the similarity factor, the conduct should not be considered at a level of generality that would render worthless the relevant conduct analysis." (quoting *United States v. Hill*, 79 F.3d 1477, 1483 (6th Cir. 1996))). The district court did not err in concluding that these offenses bore little similarity: one involved the possession of a small amount of cocaine, while the other involved an expansive conspiracy to distribute large amounts of methamphetamine to other dealers. *See United States v. Collins*, 600 F. App'x 433, 438 (6th Cir. 2015) (concluding that the defendant's state conviction for possession of heroin was not related to his federal conviction for conspiracy to distribute a large amount of heroin even though the possession conviction occurred while the conspiracy was ongoing). The cases cited by Caballero-Lazo do not stand for such a broad understanding of common or similar purpose. *See, e.g.*, *United States v. Frias*, 641 F. App'x 574, 578 (7th Cir. 2016) ("The mere fact that Frias's conduct involved 'the sale of narcotics' is insufficient to find that conduct relevant for sentencing.").

Caballero-Lazo attempts to find other connections between the offenses. He argues that his "co-conspirators . . . regularly travel[ed] to Georgia to secure narcotics from [him] as part of the conspiracy conduct" and that "[t]he source of supply for both the cocaine and the methamphetamine was from Marietta, Georgia." But even if both assertions are true, the district court did not err in concluding that neither shows that the 2016 Georgia possession of cocaine

offense was ever part of the conspiracy to distribute methamphetamine in Kentucky.[1] Nothing in the indictment or plea agreement references the distribution of cocaine as part of the conspiracy, and the statements of Caballero-Lazo's numerous co-conspirators in the PSR say nothing about cocaine.

Finally, Caballero-Lazo argues that the offenses were close in time. It is true that Caballero-Lazo's arrest for possession of cocaine occurred during the period that he was also involved in the methamphetamine conspiracy. But his involvement in the conspiracy spanned more than a year, while he was charged with possessing cocaine on a single day. The district court did not err in concluding that this temporal overlap alone was insufficient to establish that the offenses were part of the same course of conduct or common scheme or plan. We have adopted similar reasoning elsewhere. *See United States v. Escobar*, 992 F.2d 87, 90 (6th Cir. 1993) ("We can think of no justification for concluding that *any* cocaine possession by Escobar during the three-year time span of his criminal enterprise must automatically be considered as having been committed by him as part of or in furtherance of his criminal enterprise.").

---

[1] To the extent Caballero-Lazo argues that the Probation Office found an earlier, November 2013 offense involving the possession of cocaine to be "related" to the instant offense for purposes of calculating his criminal history, thereby rendering the 2016 cocaine offense "related" as well, this argument is misleading. The Probation Office explained in the PSR that the only portion of the November 2013 offense it "considered part of the instant offense" was Caballero-Lazo's possession of methamphetamine with intent to distribute. As for the count in the November 2013 indictment that charged Caballero-Lazo with possession of cocaine with intent to distribute, the Probation Office explained that this conduct was "not considered part of the instant offense."

In sum, Caballero-Lazo has failed to meet his burden of showing that his cocaine offense was "part of the instant offense"—conspiracy to distribute methamphetamine. Accordingly, the district court did not err by scoring 3 criminal history points for Caballero-Lazo's conviction for possession of cocaine.

\* \* \*

We AFFIRM Caballero-Lazo's sentence.