In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-3709

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANDRE D. BENNETT,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 05 CR 30061—**Michael J. Reagan**, *Judge.*

ARGUED FEBRUARY 14, 2006—DECIDED AUGUST 29, 2006

Before BAUER, RIPPLE, and WILLIAMS, *Circuit Judges.*

BAUER, *Circuit Judge.* On March 23, 2005, Andre Bennett was charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The charges stem from a fight Bennett was involved in on November 26, 2004. Bennett entered a plea of guilty to the one-count indictment on May 18, 2005. The government and Bennett signed a stipulation of facts regarding the incident. The stipulation recounts that on November 27, 2004, at approximately 1:15 a.m., East St. Louis police officers placed Bennett under arrest for aggravated battery. On that date, when asked by East St. Louis Police Officer Dennis Butler if he possessed any weapons, Bennett said that he had a weapon in the waistband of his jogging suit. Officer Butler

removed a Glock, Model 22, .40 caliber semiautomatic pistol from Bennett's waistband. Bennett also stipulated that he had previously been convicted of a felony offense and that he knew as a convicted felon he could not possess a firearm.

Bennett's sentencing hearing took place on September 2, 2005. The government offered evidence in support of a four-level sentencing enhancement under U.S.S.G. § 2K2.1(b)(5) and called three witnesses to offer testimony regarding what occurred on November 26, 2004. The testimony disclosed that on November 26, Bennett and his friend, Brandon Foster, confronted Dwayne Adams as Adams was walking his two pit bulls. At the hearing Adams, Foster, and Chris Davis, who was walking with Adams, all testi-fied. According to Adams, he and Davis were walking the pit bulls when Foster approached and provoked a fist fight because Foster believed Adams had called him a snitch. As the fight between Adams and Foster progressed, Bennett got out of the car that he and Foster arrived in, pulled a gun on Adams, and stopped the fight. Adams testified that Bennett pointed the gun to his face and told Adams he was going to shoot him. After pleading with Bennett not to shoot, Adams then pushed the gun away from his face. Foster and Adams started arguing again and, according to Adams, Bennett hit him across the face with the pistol. Adams fell to the ground. Bennett and Foster then kicked him several times.

After the assault, Adams went to the emergency room. As a result of the assault, Adams's eye was severely swollen to the point where he could not see out of it. At the time of the hearing, that same eye was blurry and he saw spots. According to a doctor at the Anheuser-Busch Eye Institute, there is a chance he might become blind in that eye. He also suffered sharp pains in his back and arms, and his sides, chest, and ribs were bruised and swollen. Adams's appear-ance in the district court was procured by way of subpoena, and he testified that if he had not been served with a

subpoena he would not have attended the sentencing hearing.

The court admitted into evidence Adams's records from Touchette Regional Hospital. Included in the records was a nurse's report, taken at 5:25 p.m. on November 26, 2004. In the report, Adams explained that he had been assaulted a half an hour before arriving in the emergency room and that he had been kicked in the face. He complained of pain and swelling to his right eye, nose, and upper lip. Another record generated about ten minutes later stated that Adams complained of getting jumped on, kicked in the face, and hit with a pistol. Swelling was noted on Adams's left eye, and a contusion was observed on his face. The CT Scan revealed a fracture at the base of his nasal bone and his right eye was swollen shut with extensive abrasions and a diffuse subcontusional hemorrhage. The primary diagnosis was of blunt trauma to the right side of Adams's face with a secondary diagnosis of a fractured nasal bone. Adams was referred to an ophthalmologist at the Anheuser-Busch Eye Institute for follow-up.

The next witness to testify was Chris Davis, who was with Adams on November 26, 2004. Davis testified that he and Adams had been walking the dogs before Foster started fighting with Adams. Davis explained that when the fight began, Adams had let go of the dogs and Davis tried to pick up the leashes. As he turned to go after the dogs, Davis heard clicking and what seemed like a gun charging a round of ammunition. He also heard someone say "don't shoot him, don't shoot him" but Davis did not know who it was because he had turned to go after the dogs. Davis admitted it could have been anyone with the gun because he did not see who had it. He also said that the area where the fight took place is very busy and has a lot of foot traffic.

Next, Brandon Foster testified that on November 26, 2004, he, Bennett, and two other individuals were driving

in East St. Louis when he saw Adams and Davis walking two dogs. Foster asked Bennett to stop the car and Foster got out, walked up to Adams, and asked Adams if he had been telling other people that Foster was a snitch. Foster then admitted that he hit Adams, which caused Adams to fall to the ground. At that point, Foster said, Bennett got out of the car with a gun in his hand and told Davis to pull the dogs back or Bennett would shoot them. Then, Foster heard a hammer on a gun "jack back," or load. Foster testified that Bennett then pointed the gun at Adams and Foster told Bennett "don't shoot." Foster said he then stood in between Bennett and Adams just in case the gun was fired. According to Foster, Bennett then put the gun away in his pocket, kicked Adams in the eye, and both Foster and Bennett left. The government showed Foster a photograph of the firearm, which had been entered into evidence, and Foster said it resembled the weapon Bennett had in his hand when he was fighting Adams.[1] Foster also said that he was only present at the sentencing hearing because he had been served with a subpoena.

In arriving at his findings, Judge Reagan explained that he did not know if it mattered whether Bennett struck Adams with the gun. As Judge Reagan understood the case, once Bennett pointed the gun at Adams, the crime was aggravated assault; if Bennett struck Adams with the gun, then the crime was aggravated battery. At that time, all parties and the Judge were under the mistaken impression that aggravated assault was a felony under Illinois law. As a result, Judge Reagan specifically declined to make a finding as to whether Bennett struck Adams with the gun. Instead, based on the testimony of Foster and Adams, he concluded that Bennett pointed a gun at Adams and that

---

[1] Bennett later stipulated that the weapon shown in the photograph was the firearm that was in his possession at the time of his arrest.

such conduct was aggravated assault, and thus a felony for which the enhancement could be applied. Under U.S.S.G. § 2K2.1(b)(5), if a defendant uses or possesses any firearm or ammunition in connection with another felony offense, the sentence can be increased by four levels.

The district court agreed with the recommendation of the Presentence Investigation Report that a four-level enhancement should be applied for the use of a firearm in connection with another felony. With a four-point enhancement and a three-level reduction for acceptance of responsibility, the district court calculated Bennett's offense level to be 21, with a criminal history of Category IV. This translated into a sentencing range of 57-71 months. Without the enhancement, the sentencing range would have been 41-51 months. The district court sentenced Bennett at the high end of the enhanced range, to 71 months' imprisonment and three years' supervised release. Bennett filed a timely notice of appeal.

Bennett argues that the district court erred in making the factual determination that his conduct during the fight with Adams triggered the four-level sentencing enhancement under U.S.S.G. § 2K2.1(b)(5). Specifically, Bennett contends that the testimony given at the sentencing hearing by the three witnesses was inconsistent and unreliable. In this analysis, we also address whether Bennett's sentencing enhancement can be affirmed given the district judge's and the parties' mistaken belief that aggravated assault was a felony offense in Illinois. Bennett did not raise this issue in the lower court nor in his opening brief. Instead, the government pointed out the error in its brief.

In the post-*Booker* era, this Court continues to review the district court's application of the Sentencing Guidelines *de novo* and its factual findings for clear error. *United States v. Bothun*, 424 F.3d 582, 586 (7th Cir. 2005). The factual findings of the district court will not be overturned unless

the reviewing court is left with the definite and firm conviction that a mistake has been made. *United States v. Corral*, 324 F.3d 866, 870 (7th Cir. 2003).

Bennett contends that the district judge clearly erred in finding that Bennett pointed a firearm at another individual. Specifically, Bennett takes issue with Judge Reagan's finding that the eyewitness testimony was reliable. Bennett argues that, at one point, eyewitness Foster testified that Bennett pointed the gun at the dogs. Later in the testimony, Foster stated that Bennett pointed the gun at Adams. Because, in Bennett's opinion, this proves Foster's testimony was internally inconsistent, he contends the court should have disregarded both the testimony of Adams and Foster. Bennett argues that without corroboration, Adams's testimony is plainly unreliable.

What Bennett does not acknowledge, however, is that as the factfinder, the district court's credibility determinations are given great deference and they "cannot be challenged on appeal unless the court credited testimony that was essentially unbelievable as a matter of law." *United States v. Smith*, 308 F.3d 726, 746 (7th Cir. 2002) (citing *United States v. Ray*, 238 F.3d 828, 834 (7th Cir. 2001). Where there may be a conflict in testimony received by the district court, its ultimate findings of fact will not be set aside by this Court unless those findings are clearly erroneous. *Amadeo v. Zant*, 486 U.S. 214, 227-28 (1988). Sentencing judges are capable of considering the motivations of witnesses, weighing conflicting evidence, and are much more capable than this Court to make credibility determinations. *See United States v. Johnson*, 227 F.3d 807, 813 (7th Cir. 2000).

Judge Reagan took into account all the testimony and evidence presented at the sentencing hearing. In reviewing the record, this Court finds that he did not commit clear

error in crediting Foster's testimony or Adams's testimony. When read in whole, Foster's testimony does not appear to be inconsistent: When Bennett first got out of the car he pointed the gun at the dogs and as the fight escalated he pointed the gun at Adams. Given the record and the duty of a sentencing judge to weigh the testimony and evidence, we find that Judge Reagan did not clearly err in crediting the testimony at sentencing.

Since the defendant did not raise the issue below that the court was mistaken in finding that aggravated assault was a felony, nor was it raised in his opening brief to this Court, we are confined to plain error review. *United States v. Wilson*, 437 F.3d 616, 621 (7th Cir. 2006). The district judge erred in finding that aggravated assault supported a four-level sentencing enhancement under U.S.S.G. § 2K2.1(b)(5). Aggravated assault in Illinois is only a Class A misdemeanor with a possible term of imprisonment that is less than one year. 720 ILCS 5/12-2 (a)(1), (b) (West 2002); 730 ILCS 5/5-8-3 (a)(1) (West 2002). While there may be alternate grounds for affirming the district court's application of the U.S.S.G. § 2K2.1(b)(5) enhancement, the district judge did not reach a finding on any of these alternate grounds. We find that the district judge did plainly err when he enhanced Bennett's sentence based on misdemeanor conduct. The case is REMANDED for resentencing on the facts consistent with the opinions herein expressed.

A true Copy:

     Teste:

                 _____
                 *Clerk of the United States Court of*
                 *Appeals for the Seventh Circuit*