## In the
## United States Court of Appeals
### For the Seventh Circuit

No. 07-3399

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

BRANDON L. SINGLETON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 07 CR 30030—**Michael J. Reagan,** *Judge*.

ARGUED APRIL 16, 2008—DECIDED NOVEMBER 24, 2008

Before EASTERBROOK, *Chief Judge,* and WOOD and WILLIAMS, *Circuit Judges*.

WILLIAMS, *Circuit Judge.* Brandon Singleton was convicted of one count of distributing five or more grams of crack cocaine. On appeal, he contends that the district court erred by holding him responsible for uncharged conduct that was not sufficiently related to the conduct for which he was convicted. Singleton also argues that resentencing is appropriate because of the Supreme

Court's decision in *Kimbrough v. United States,* 128 S. Ct. 558, 169 L.Ed.2d 481 (2007), where the court held that a district court judge can take the crack/cocaine powder disparity into consideration in deciding whether to impose a below-guidelines sentence. We reject Singleton's argument that the uncharged conduct was not sufficiently related to his charged offenses, but because we cannot determine whether the district court would have taken the crack/cocaine powder disparity into account at sentencing had it not been constrained by our pre-*Kimbrough* precedents, we reverse and remand this case for Singleton to be resentenced.

## I. BACKGROUND

On September 1, 2006, a confidential informant cooperating with law enforcement made a controlled buy of a quarter ounce of crack cocaine from Singleton. The incident occurred behind a housing duplex in Alton, Illinois, and was videotaped. The drugs that the confidential source purchased were analyzed and found to contain 6.6 grams of cocaine base.

On February 23, 2007, Singleton was charged with one count of distributing five grams or more of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). On May 21, 2007, Singleton pled guilty to the charge without the benefit of a plea agreement. Prior to sentencing, the Probation Office filed a presentence report ("PSR") that detailed Singleton's relevant conduct. In the PSR, the probation officer explained that in 2000, Singleton started selling crack to Donald McCrady, a childhood

friend. Initially, Singleton and McCrady started selling crack cocaine together when they were in their teens, but McCrady was caught and sent to state prison at age eighteen. When McCrady was released in October of 2000, he purchased approximately one to two ounces of crack cocaine per week from Singleton. These purchases took place over the next five weeks until he was caught and went to prison again. For the next six years, whenever McCrady was not in prison, he purchased one to two ounces per week of crack cocaine from Singleton.

The original presentence report added all of Singleton's drug sales to McCrady using the two ounce per week amount in order to calculate relevant conduct. However, the probation officer did not take McCrady's prison terms into account as times when he would not have been able to purchase drugs from Singleton. Therefore, the probation officer calculated that 12,247 grams of crack cocaine could be attributed to Singleton as relevant conduct for the purpose of sentencing.

Singleton filed a formal objection to the PSR, stating that McCrady was in prison during seventeen to eighteen months of the relevant time period and that the total amount of crack attributed to Singleton should be lowered accordingly. He further argued that McCrady was not a reliable witness and therefore the government could not meet its burden of proving relevant conduct. In response, the probation officer subtracted eighteen months of drug sales out of the total amount and concluded that 8,164 grams of crack cocaine were still attributable to Singleton. There was no resulting effect

on the guideline calculation because any drug sales over 1,500 grams results in an offense level of 38.

At the sentencing hearing, McCrady testified that he purchased one to two ounces of crack cocaine from Singleton every week that he was not in prison from 2000 through 2006. Defense counsel cross-examined McCrady about his criminal history, his drug and alcohol abuse, his dyslexia, and his prison time. Singleton argued that McCrady was not reliable or credible and that he should only be sentenced for the 6.6 grams that he pled guilty to distributing.

The government contended that the arguments presented by the defense at the sentencing hearing were materially different from the proffer that Singleton signed, in that Singleton himself had admitted to significantly higher numbers of drug sales, so the government sought permission to enter Singleton's proffer into evidence.

The judge agreed that it was inconsistent for Singleton to argue that he was only responsible for distributing 6.6 grams of crack when he indicated in the proffer that he was responsible for distributing a significantly greater amount. The court admitted the proffer into evidence. Based on Singleton's own statements in the proffer, the government argued that he was responsible for distributing at least 3,326 grams of crack during the relevant time period (2000-2006). The court concluded that Singleton's drug sales to McCrady constituted relevant conduct and that McCrady's testimony was credible.

The court then summarized the calculations of Single-ton's drug transactions and settled on a relevant conduct total of 5,124 grams, resulting in an offense level of 38 which carries an advisory guidelines range of 210-262 months. Singleton was sentenced at the low end of the guidelines, 210 months, and he appeals.

## II. ANALYSIS

### A. The district court did not err in its relevant conduct calculation.

We review the district court's drug quantity findings at sentencing for clear error. *United States v. Smith*, 308 F.3d 726, 745 (7th Cir. 2002). We will not overturn the factual findings of the district court unless we are "left with the definite and firm conviction that a mistake has been made" by the district court. *United States v. Bennett*, 461 F.3d 910, 912 (7th Cir. 2006).

### 1. Relevant conduct and credibility determinations

The United States Sentencing Guidelines ("U.S.S.G.") § 1B1.3 provides that relevant conduct includes all acts and omissions committed by the defendant, that were part of the same course of conduct or common scheme or plan as the offense of conviction. Here, the government argues that Singleton's sales to McCrady constitute a pattern of continuous drug trafficking that is part of the same course of conduct as the charged offense. Single-

ton maintains, however, that the government introduced no evidence linking the September 1, 2006 sale to the confidential informant (for which he was charged) to the McCrady sales. He argues that the government, therefore, failed to show a connection that would justify holding Singleton responsible for this uncharged conduct. *See United States v. Ruiz*, 178 F.3d 877, 882 (7th Cir. 1999) (finding that the charged offenses did not amount to relevant conduct because the participants were different and there was a two-year gap in the activity).

The government can prove relevant conduct by showing that offenses are part of the same course of conduct if they are "part of a single episode, spree or ongoing series of offenses." *United States v. Ortiz*, 431 F.3d 1035, 1040 (7th Cir. 2005). In assessing whether offenses are part of the same course of conduct, the court looks at whether there is a strong relationship between the uncharged conduct and the convicted offense, a relationship that the government can demonstrate by showing "a significant similarity, regularity, and temporal proximity." *Id.* (internal citations omitted).

Here, there is sufficient evidence that Singleton regularly engaged in drug sales. We define regularity as "repeated acts or events that take place at fixed and certain intervals or in accordance with the same consistent or periodical rule or practice." *United States v. Sykes*, 7 F.3d 1331, 1337 (7th Cir. 1993) (internal quotation marks omitted). McCrady testified that he purchased crack cocaine from Singleton over different time periods from February 2000 until July 2006 (or May 2006 according to

Singleton), and the offense for which Singleton was charged took place two to four months after his last documented sale to McCrady. *See United States v. Zehm*, 217 F.3d 506, 512 (7th Cir. 2000) (stating that "[drug] purchases predating convicted sales may be considered relevant conduct").

Although there is a gap between Singleton's last sale to McCrady and his sale to the confidential informant, this does not mean, as a matter of law, that temporal proximity is missing. *Cf. Oritz,* 431 F.3d at 1041 (finding no temporal proximity where there was, at a minimum, a ten-month gap between the drug transactions); *see also United States v. Mullins*, 971 F.2d 1138, 1144 (4th Cir. 1992) (temporal proximity "extremely weak" where uncharged conduct occurred six months prior to offense of conviction); *United States v. Hahn*, 960 F.2d 903, 911 (9th Cir. 1992) (evidence of specific similarity and regularity important where period of five months separated drug transactions). The record indicates that the gap between the two sales is not because the parties were discontinuing their routine of regular drug sales, but rather because McCrady was indicted in May 2006 and imprisoned in July 2006. Although it is not clear when Singleton engaged in his last drug transaction with McCrady (either May or July 2006), McCrady's imprisonment put an end to the pattern of drug dealing between the parties and makes the two to four month gap between the charged and uncharged conduct less problematic. *See United States v. Cedano-Rojas*, 999 F.2d 1175, 1180 (7th Cir. 1993) (finding that "[a] respite is unlikely to be fatal in the finding of a course of conduct if the interruption was not

the choice of the players. In such circumstances, the lapse does not indicate that the course was abandoned but only that, in spite of the efforts of the participants, the venture was inadvertently put on hold.").

Moreover, there is sufficient similarity between the charged and uncharged offenses to shore up any weaknesses in the government's case regarding temporal proximity. Despite the fact that the charged and uncharged offenses involved different participants and different amounts, the uncharged conduct involved the same principal, the same location, and the same drug—facts that render it similar enough to the offense of conviction to show that Singleton was engaging in an ongoing pattern of conduct. *See United States v. White*, 519 F.3d 342, 348 (7th Cir. 2008) (upholding relevant conduct finding where the common denominators in the transactions are the defendant and "his unbroken series of sales to lower level drug sellers in Decatur"); *see also United States v. Wilson,* 502 F.3d 718, 724 (7th Cir. 2007) (upholding relevant conduct finding on the grounds that the defendant regularly dealt in large quantities of cocaine during this period, even though he obtained the cocaine from different sources); *United States v. Morris*, 76 F.3d 171, 175 (7th Cir. 1996) (finding similarity even though the parties involved in the transactions were not identified because all of the other relevant factors— location, the defendant's involvement, drug pricing, etc.— were the same); *United States v. Gooden*, 892 F.2d 725, 729 (8th Cir. 1989) (finding that the defendant took part in "drug transactions of a similar character, conducted in the same geographical area within [six to

eight] months of the offense of conviction . . . demonstrat[ing] a pattern of continuous drug activity"). Singleton was a supplier of crack cocaine and had engaged in consistent crack sales over a period of six years in Alton, Illinois, and the uncharged offenses were part of an ongoing series of offenses that justified their inclusion in the related conduct drug calculation.

Singleton also argues that the district court failed to make the required factual findings for determining relevant conduct and that this amounted to clear, reversible error. Singleton maintains that although the district court claimed that it was adopting the findings of the PSR, the PSR never adequately discussed whether the sales to McCrady were part of the same course of conduct as the charged offenses. When "a district court aggregates drug quantities arising from charged or uncharged relevant conduct, the court should explicitly state and support, either at the sentencing hearing or preferably in a written statement of its reasons, its finding that the unconvicted activities bore the necessary relation to the convicted offense." *United States v. Sumner*, 265 F.3d 532, 539 (7th Cir. 2001).

Here, the district court did not independently consider the factors of temporal proximity, similarity, regularity, or common plan/scheme, but the district court's consideration of McCrady's testimony and the PSR are sufficient to show that it made the relevant factual findings. The district court determined that McCrady was credible, then detailed the history of drug sales between McCrady and Singleton, and finally, summarized the amounts (one to two ounces per week) that Singleton sold to McCrady

from 2000 to 2006 and concluded that Singleton was responsible for 5,124 grams of crack cocaine. *See United States v. Williams*, 272 F.3d 845, 852 (7th Cir. 2001) ("Where it is clear that the district judge believed the required relationship to be present and the judge's implicit finding is supported by the record, we have been reluctant to remand simply because the judge failed to invoke the 'magic words' of section 1B1.3(a)(2).").

Singleton argues that the district court erred by relying on McCrady's testimony in determining relevant conduct because McCrady is a convicted felon and he has also engaged in drinking and marijuana use. We are "reluctant to disturb credibility determinations absent a compelling reason." *United States v. Noble*, 246 F.3d 946, 951 (7th Cir. 2001). Here, no compelling reason exists. While McCrady's felon status is one factor that the district court can consider in weighing the evidence, it is also within the district court's discretion to give some weight to his testimony, notwithstanding his status. *United States v. Johnson*, 489 F.3d 794, 797 (7th Cir. 2007) (the district court can credit testimony that is "totally uncorroborated and comes from an admitted liar, convicted felon, large scale drug-dealing, paid government informant") (internal citation omitted). Here, the district court acknowledged that McCrady was a career felon, but noted that his testimony was unrebutted, he testified convincingly, and he did not appear to be coy or deceptive. *See Cedano-Rojas*, 999 F.2d at 1180. ("So long as the information which the sentencing judge considers has sufficient indicia of reliability to support its probable accuracy, the information may properly be taken into

account in passing sentence."). Furthermore, McCrady and Singleton grew up together, sold crack together on occasion, and had a buyer-seller relationship that spanned a six-year period. We find that the district court did not clearly err by finding McCrady to be a credible witness.

### 2.    Use of Singleton's proffer was proper.

After oral argument in this case, we decided *United States v. Farmer*, 543 F.3d 363, 374 (7th Cir. 2008), which found that the government violated the terms of a defendant's proffer agreement by improperly using information given by the defendant in his proffer against him. Here, the district court admitted Singleton's proffer because it found he took a position at sentencing inconsistent with his proffer statements. The sixth paragraph of the proffer agreement bars the government from using any incriminating information provided by Singleton, but allows use of the proffer if Singleton made materially inconsistent statements. The proffer agreement included the following clause:

> Sixth, pursuant to Section 1B1.8 of the Sentencing Guidelines, no self-incriminating information given by your client will be used to enhance the Offense Level against your client except as provided in that Section. The government, may, however, use any statements made or other information provided by your client to rebut evidence or arguments at sentencing materially different from any statements made or other information provided by your client during the "off-the-record" proffer or discussion.

Singleton maintains the district court clearly erred by using the proffer to determine the relevant conduct for sentencing purposes, which he claims violates the terms of the proffer agreement. Singleton contends that he never admitted in his proffer that his prior drug transactions were relevant to the charged offense conduct. The government argues it offered the proffer only to show Singleton's position taken at sentencing—that he only was responsible for the 6.6 grams of crack cocaine he was charged with—was inconsistent with his proffered statement that he sold more than six grams of crack cocaine in the past.

*Farmer* cautions against the use of proffers for sentencing purposes. *Id.* However, *Farmer* is distinguishable from this case in that the defendant's proffer in *Farmer* was the sole evidence of the amount of cocaine used to increase his offense level. *Id.* Here, the district court relied on McCrady's testimony and the PSR to determine the amount of crack cocaine attributable to Singleton. The PSR here, unlike the PSR in *Farmer*, was not based on Singleton's proffer. We need not remand because the district court based the drug quantity determination on McCrady's testimony and not any information given by Singleton in his proffer.

Therefore, we find that the district court did not err by including Singleton's drug sales to McCrady in the relevant conduct calculation. We further conclude that admitting Singleton's proffer was not a reversible error because the court based Singleton's sentence on McCrady's testimony.

### B. A limited remand is appropriate in light of *Kimbrough*.

Singleton was sentenced prior to the Supreme Court's decision in *Kimbrough*, which allows a district court judge to take the crack/cocaine powder disparity into consideration in deciding whether to impose a below-guidelines sentence. Singleton did not argue in the proceedings below that applying the 100:1 ratio would yield an unreasonable sentence, and we cannot determine whether the district court would have taken the ratio into account had it not been constrained by our pre-*Kimbrough* precedents. *See United States v. Taylor*, 520 F.3d 746, 748-49 (7th Cir. 2008). Accordingly, we issue a limited remand to allow the district court to inform us whether it wishes to resentence Singleton in light of *Kimbrough*. *See id.*

## III. CONCLUSION

We issue a LIMITED REMAND for proceedings consistent with our opinion in *Taylor*, 520 F.3d at 748-49.