In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-3284

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CHRISTOPHER BAINES,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 08 CR 562 — **Rebecca R. Pallmeyer**, *Judge.*

ARGUED NOVEMBER 5, 2014 — DECIDED FEBRUARY 9, 2015

Before BAUER, ROVNER, and TINDER, *Circuit Judges.*

BAUER, *Circuit Judge.* Defendant-appellant, Christopher
Baines ("Baines"), pleaded guilty to one count of conspiracy
to possess with intent to distribute heroin, in violation of 18
U.S.C. § 846. The district court sentenced Baines to 240 months'
imprisonment. Baines appeals his sentence on three grounds.
First, he argues that the district court improperly attributed
significant quantities of heroin to him as relevant conduct in
determining his sentence. Second, he contends that the district

court failed to sufficiently account for his arguments in
mitigation. Lastly, he requests that this court remand his case
for resentencing in light of a recent amendment to the United
States Sentencing Guidelines, which reduces the offense level
applicable to many drug trafficking offenses. We affirm.

## I. BACKGROUND

In February 2007, the Drug Enforcement Agency, Federal
Bureau of Investigation, Internal Revenue Service, Chicago Po-
lice Department, and Cook County State's Attorney's Office
began conducting a joint investigation of Baines and his
suspected drug trafficking organization. Over the course of
the investigation, agents gathered information and evidence
through surveillance, confidential informants, cooperating
defendants, consensually recorded conversations, and judi-
cially authorized wire intercepts from telephones used by
Baines. The investigation also included a series of controlled
purchases through which agents seized heroin from Baines
and his cohorts in increments of 29.5 grams, 41.3 grams, 49
grams, 50 grams, and 165 grams.

A criminal complaint was filed on July 16, 2008, charging
Baines and three members of his illicit organization, Christine
Burgos, Craig Smith, and Charles Parker, with conspiring to
distribute in excess of one kilogram of heroin. On Septem-
ber 25, 2008, a grand jury returned a thirteen-count indictment
against the same four defendants, naming Baines in seven of
the thirteen counts. Each of the four defendants pleaded guilty
pursuant to written plea agreements.

Baines pleaded guilty to Count One of the indictment,
which charged that "beginning in or around 2007, and continu-

ing until in or around March 2008," Baines conspired with Burgos, Smith, Parker, and others to distribute one kilogram of heroin or more in and around the west side of Chicago.[1] *See* 21 U.S.C. § 846. As reflected in the plea agreement, the parties disputed the amount of drugs involved in the charged conspiracy and attributable to Baines as relevant conduct. Baines refused to accept responsibility for any drug quantity in excess of 334 grams of heroin—the amount of heroin that law enforcement seized from him. The government maintained in the plea agreement, and sought to prove at sentencing, that the charged conduct and relevant conduct attributable to Baines exceeded 30 kilograms of heroin, in addition to kilogram quantities of cocaine. A two-day sentencing hearing regarding the disputed drug quantity, among other issues not relevant to this appeal, ensued.

At the sentencing hearing, the government presented the admissions contained in Baines' plea agreement, together with the plea agreements of Baines' codefendants, each of which testified to Baines' leadership role in distributing wholesale quantities of heroin in and around the west side of Chicago. The government offered the plea agreement of Claude McKay, a defendant in a related case, which indicated that beginning in or around 2005 and continuing until at least the end of 2006, McKay obtained approximately 50 to 400 grams of heroin from Baines, through Burgos, every two weeks. The government also referenced a number of intercepted telephone calls, including one in which Baines discussed various aspects of his

---

[1] In return for Baines' guilty plea, the government agreed to dismiss the remaining indictment counts lodged against him upon sentencing.

narcotics trafficking and bragged about making $25,000 per month and having multiple houses. The government's primary evidence, however, consisted of the witness testimony of Baines' codefendant Christine Burgos and a defendant in a related case, Emeterio Gutierrez.

Burgos testified that beginning in 2004 and continuing until her arrest in mid-2008, she received, stored, and distributed wholesale quantities of heroin and cocaine at Baines' direction. In 2004, Burgos took receipt of approximately a kilogram of heroin per week and 5 to 20 kilograms of cocaine every other month from Henry Rendon. From 2005 through mid-2008, she received narcotics on Baines' behalf from a man she identified as "Kentucky." Burgos picked up a kilogram of heroin per week from Kentucky in 2005 and 2006. Although she testified that things "slowed down" in 2007 because Baines "owed people money," she continued to take receipt of two kilograms of heroin per month from Kentucky. In addition, Burgos picked up kilogram quantities of cocaine from Kentucky during 2005 and 2006. Burgos' testimony further described how, at Baines' direction, she rented apartments in her name for Baines to use as stash houses from 2004 to 2008; how she frequently took receipt of narcotics from Kentucky at a Best Buy near the North Riverside Mall, where he'd arrive in a red Dodge Durango; how she personally observed Baines "re-rock" and stash kilogram quantities of heroin over 100 times; and how she typically distributed heroin to Baines' customers in quantities ranging from 50 to 500 grams. Burgos also testified to Baines' extravagant lifestyle, multiple houses, cars, motorcycles, and Baines' lack of legitimate employment.

Gutierrez, whom Burgos identified as "Kentucky," corroborated large parts of Burgos' testimony. Gutierrez testified that, on average, in 2005 and 2006, he delivered to Baines, through Burgos, approximately a kilogram of heroin per week. From 2007 to mid-2008, Gutierrez testified that, although things "slowed down" because Baines owed him "a big sum of money," he continued to supply Baines with approximately two kilograms of heroin every month. He further testified to delivering approximately 5 to 20 kilograms of cocaine to Baines on a bi-weekly basis from 2005 to 2006, and once per month in 2007. Gutierrez also testified consistently with Burgos regarding the locations and vehicles used to deliver heroin and cocaine, Baines' extravagant lifestyle, and Baines' lack of employment.

The district court found the testimony of Burgos and Gutierrez consistent with each other, the plea agreements, and Baines' own recorded comments. On this basis, the court concluded that "even a conservative assessment of that evidence, even if we discount the quantities [Burgos and Gutierrez] describe with some significance, we still exceed 30 [kilograms of heroin] in this case." Accordingly, the court held Baines responsible for in excess of 30 kilograms of heroin, triggering a base offense level of 38. The court applied a two-level increase for Baines' managerial role in the offense and a two-level decrease for his acceptance of responsibility, resulting in a net offense level of 38. The district court calculated Baines' Guidelines range, based on an offense level of 38 and criminal history category of III, at 292–365 months' imprisonment. After considering Baines' arguments in mitigation, the court fashioned a well below-Guidelines sentence of 240

months' imprisonment and imposed an agreed upon $300,000 forfeiture judgment. This appeal followed.

## II.  DISCUSSION

### A.  The District Court's Relevant Conduct Finding

Baines insists that the district court erred in treating his uncharged drug trafficking offenses from 2004 through 2006 as relevant conduct. Whether uncharged offenses amount to relevant conduct under the Sentencing Guidelines is a factual determination, which we review for clear error. *United States v. Delatorre*, 406 F.3d 863, 866 (7th Cir. 2005). We will not second guess the district court unless, after reviewing the record as a whole, "we are left with a definite and firm conviction that a mistake has been made." *United States v. Singleton*, 548 F.3d 589, 591 (7th Cir. 2008).

With respect to drug offenses, Sentencing Guidelines § 1B1.3(a)(2) provides that all acts or omissions committed by the defendant "that were part of the same course of conduct or common scheme or plan as the offense of conviction" should be deemed "relevant conduct" for sentencing purposes. *United States v. Sumner*, 325 F.3d 884, 889 (7th Cir. 2003). This "relevant conduct" rule permits sentencing courts to consider additional quantities of drugs not specified in conviction, provided "the unconvicted activities bore the necessary relation to the convicted offense." *United States v. Bacallao*, 149 F.3d 717, 719 (7th Cir. 1998) (internal quotation marks omitted). According to the Guidelines, two or more offenses are part of a common scheme or plan if they are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar

*modus operandi.*" U.S.S.G. § 1B1.3(a)(2), cmt. n.9(A). Offenses that do not meet the requirements of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are "sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." *Id.* at n.9(B). In assessing whether offenses are part of the same course of conduct, we focus on "whether the government has demonstrated a significant 'similarity, regularity, and temporal proximity.'" *United States v. Ortiz*, 431 F.3d 1035, 1040 (7th Cir. 2005) (quoting *United States v. Acosta*, 85 F.3d 275, 281 (7th Cir. 1996)). When one of these factors is relatively weak or absent, a stronger showing of the other two will support a finding of relevant conduct. U.S.S.G. § 1B1.3(a)(2), cmt. n.9(B); *see also Sumner*, 325 F.3d at 889; *Acosta*, 85 F.3d at 281. Relevant conduct must be established by a preponderance of the evidence. *United States v. Johnson*, 342 F.3d 731, 734 (7th Cir. 2003).

Here, Baines argues that his uncharged offenses from 2004 through 2006 are too remote in time and too dissimilar, with respect to the amount of drugs distributed, from the charged conspiracy to be considered relevant conduct. In the alternative, he contends that the district court failed to make the required factual findings for determining relevant conduct, which constitutes reversible error. We review Baines' "temporal gap" argument for plain error, since the defendant forfeited this argument by failing to raise it below. *See United States v. Arroyo*, 406 F.3d 881, 888 (7th Cir. 2005). At any rate, the district court did not commit error, plain or otherwise, in its relevant conduct finding.

Baines' temporal gap argument is hollow. For starters, as the government points out, his argument distorts the record. Although Gutierrez stated at one point during his testimony that he stopped supplying Baines with drugs in 2007, he corrected himself immediately thereafter, testifying that he supplied Baines consistently from 2005 through 2008 but "slowed down in quantities" in 2007 and 2008 because Baines owed him "a big sum of money." Gutierrez again reaffirmed, later on both direct and cross-examination, that he supplied kilogram quantities of heroin to Baines in 2007. Burgos similarly testified that, although things "slowed down" in 2007 because Baines owed people money, Baines' heroin trafficking never stopped from 2004 until mid-2008. The district court believed Burgos' and Gutierrez's testimony that Baines received kilogram quantities of heroin on a regular basis from at least 2005 through mid-2008.[2] *See United States v. Clark*, 538 F.3d 803, 813 (7th Cir. 2008) ("A district court's determination of witness credibility is entitled to great deference and can virtually never be clear error."(internal quotation marks omitted)). Even supposing for the sake of argument that some temporal gap occurred in 2007, the offenses are connected by multiple common factors: the same principal (Baines), drug courier/accomplice (Burgos), location (in and around the west

---

[2] As the district court acknowledged, even if we were to discount Baines' trafficking activities with Henry Rendon, Baines' supplier in 2004, holding Baines responsible for in excess of 30 kilograms of heroin would still be a conservative estimate, since both Burgos and Gutierrez testified that during 2005 through 2006 Baines took receipt of approximately a kilogram of heroin per week, slowing down to a kilogram of heroin every two weeks in 2007 through 2008.

side of Chicago), stash houses, delivery points, delivery vehicles, and the same drug supplier from 2005 through mid-2008 (Gutierrez). These common factors not only render Baines' uncharged offenses similar enough to the offense of conviction to show that Baines was engaging in an ongoing pattern of conduct, *see* U.S.S.G. § 1B1.3(a)(2), cmt. n.9(B); *Singleton*, 548 F.3d at 592–93 (holding that despite a two to four month temporal gap, "the uncharged conduct involved the same principal, the same location, and same drug-facts that render it similar enough" to show "an ongoing pattern of conduct"), but they more than suffice to make Baines' uncharged offenses part of the same common scheme or plan as the offense of conviction. *See* U.S.S.G. § 1B1.3(a)(2), cmt. n.9(A); *Delatorre*, 406 F.3d at 867 (holding that despite three year gap, defendant's uncharged offenses and offense of conviction involved the same principal, a common accomplice, and the same supplier in Amsterdam working together to smuggle ecstasy into the United States, thereby making the uncharged offenses part of the same common scheme or plan).

Baines' argument that his uncharged offenses are too dissimilar from the offense of conviction is equally flawed. According to Baines, the disparity between the amounts of heroin that law enforcement seized from him in 2007 and 2008—29.5 grams, 41.3 grams, 49 grams, 50 grams, and 165 grams—and Burgos' testimony that she never distributed less than 250 grams of heroin to various customers from 2004 to 2006, underscores the separateness of the activities. As a preliminary matter, the only seizures involving Baines' distribution of heroin were those of 49 and 165 grams. Both quantities are in line with Burgos' sentencing hearing testi-

mony and plea agreement admission that she generally distributed heroin in quantities ranging from 50 to 400 or 500 grams. In addition, both quantities match up with the admission in Claude McKay's plea agreement that he received between 50 and 400 grams of heroin from Baines, through Burgos, every other week between 2005 and 2006. Moreover, at no point in her testimony did Burgos claim that she *never* distributed under 250 grams of heroin between 2004 and 2006; she merely testified that she distributed 250–400 grams of heroin to various customers she could remember "offhand." Thus, as a factual matter, Baines' argument is tenuous, if not unfounded.

Baines also contends that the district court failed to make the required factual findings for determining relevant conduct and that this amounted to clear, reversible error. When a district court aggregates drug quantities arising from charged and uncharged relevant conduct, we have required the court "explicitly state and support its findings that the uncharged quantities are sufficiently related to the offense of conviction." *Untied States v. Wilson*, 504 F.3d 718, 723 (7th Cir. 2007). The sentencing transcript reflects that the district court found the testimony of Burgos and Gutierrez credible, and it did so for good reason—their testimony was "consistent" with each other, the plea agreements, and Baines' own recorded comments. Based on this testimony, the district court determined that Baines was "not involved in a few isolated transactions over a few years" but was in fact running "a significant enterprise." The record also reflects the district court's agreement with the government that from at least 2005 through mid-2008, Baines used the same drug runner, drug supplier, stash

houses, delivery points, and delivery vehicles to distribute significant quantities of heroin in and around the west side of Chicago. Although the district court did not invoke the terms "common scheme or plan" or "same course of conduct," its consideration of the testimony presented and the government's arguments made at sentencing are sufficient to show it made the relevant factual findings. *See United States v. Williams*, 272 F.3d 845, 852 (7th Cir. 2001) ("Where it is clear that the district court judge believed the required relationship to be present and the judge's implicit finding is supported by the record, we have been reluctant to remand simply because the judge failed to invoke the 'magic words' of section 1B1.3(a)(2)."); *see also Wilson*, 504 F.3d at 723. Nothing more is required to understand the basis for the district court's relevant conduct finding and, accordingly, there is no need to remand for further explanation.

### B. Baines' Arguments in Mitigation under § 3553(a)

Baines insists that the district court committed procedural error by failing to address the factors delineated under 18 U.S.C. § 3553(a). Specifically, he claims that the district court failed to address his arguments in mitigation based on the sentencing disparities between him and his codefendants, his family circumstances, and his troubled youth. We review a sentence for procedural error *de novo*. *United States v. Lyons*, 733 F.3d 777, 784 (7th Cir. 2013).

Baines' arguments are without merit. The record reveals that the district court understood and considered Baines' mitigation arguments. In response to Baines' chief argument in mitigation—that his codefendants were sentenced to signifi-

cantly shorter prison sentences—the court explicitly acknowledged that it had given the "other defendants in this entire indictment below-guideline sentences" and that it was "inclined to do the same thing in [Baines'] case in spite of the fact" that "Mr. Baines really [was] the leader and was running a lot of what was going on here." The district court explained, "whether … somebody else got an unfairly generous shake is another issue"; Baines' leadership role in distributing vast amounts of a drug "that is dangerous and that destroys the fabric of our community and makes Chicago not a nice place to be" warrants a "substantial sentence." Without belaboring the point, the district court gave the sentences of Baines' codefendants the thoughtful consideration contemplated by § 3553(a) when arriving at Baines' below-Guidelines sentence.

Baines' mitigation argument based on family circumstances fares no better. With respect to his family circumstances, the court acknowledged the pain that Baines' conviction had caused his family, which consisted solely of his mother, stating, "I can tell from the submissions I have received that it was heartbreaking for your family that this happened. I'm glad that you were able to patch things up with your mother because I know it was really hard for her when you were arrested on these charges." Moreover, the district court cited Baines' family circumstances in its written statement of reasons when explaining why it imposed a below-Guidelines sentence. *See United States v. Pape*, 601 F.3d 743, 747 (7th Cir. 2010) (noting that we review the district court's written statement of reasons alongside the sentencing transcript); *United States v. Baker*, 445 F.3d 987, 991–92 (7th Cir. 2006) (we "review for thoroughness the district court's reasoning for sentencing … as

contained in its written statement and as articulated during the sentencing hearings"). The court plainly took Baines' family circumstances into account, no further discussion of the subject was necessary.

Lastly, Baines argues that the district court passed over in silence his traumatic childhood—the murders of his two brothers and best friend which, he claims, caused him chronic depression that has gone untreated. Although sentencing courts are not obligated to address stock arguments based on a defendant's difficult childhood, *see United States v. Cheek*, 740 F.3d 440, 455 (7th Cir. 2014); *United States v. Brock*, 433 F.3d 931, 937 (7th Cir. 2006), the district court acknowledged in its written statement of reasons that Baines' traumatic youth was yet another consideration that the court took into account when imposing a below-Guidelines sentence.

## C. Remand in Light of Amendment to the Sentencing Guidelines

Baines' last argument is that this court should remand for resentencing in light of a recent amendment to the Sentencing Guidelines published by the United States Sentencing Commission. Because we affirm Baines' sentence today, the proper vehicle to seek retroactive relief under a revised Guideline is a motion to the district court pursuant to 18 U.S.C. § 3582(c), a course with which both defense counsel and the government agreed at oral argument is proper.

## III. CONCLUSION

For these reasons, Baines' sentence is AFFIRMED.