In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

Nos. 13-2882 & 13-2974

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RAHSHONE BURNETT,

*Defendant-Appellant.*

———————————

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
Nos. 11 CR 00571 and 09 CR 1030  — **Matthew F. Kennelly**, *Judge,* and
**Robert W. Gettleman**, *Judge.*

———————————

ARGUED NOVEMBER 4, 2014 — DECIDED OCTOBER 13, 2015

———————————

Before MANION, WILLIAMS, and SYKES, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* We consolidated on appeal Rahshone Burnett's appeals of the sentences he received in two separate cases. In his drug case, a jury convicted him of buying and selling about 33 grams of heroin but acquitted him of participating in a conspiracy. At sentencing, the gov-

ernment argued that one to three kilograms of drugs were sold in the conspiracy and should be included in Burnett's relevant conduct for sentencing purposes. We find no clear error in the district court's attribution of 100 grams of heroin to Burnett. Burnett conceded he had purchased 100 grams of heroin, and this purchase was part of the same course of conduct as the offenses of conviction. In his fraud case, Burnett pled guilty to mail and wire fraud after he bought expensive cars and other items for his own benefit out of settlement funds meant for his sister's surviving children. Although Burnett maintains he should not have received both vulnerable victim and abuse of a position of trust enhancements, we find no clear error because the United States Sentencing Guidelines do not prohibit the application of both enhancements, and the two enhancements punished different conduct here. We affirm the judgments in both cases.

## I. BACKGROUND

On September 5, 2009, Tyotis Fields was driving to the corner of Central Park Avenue and Huron Street in Chicago when he was stopped for a traffic violation. A search of his car turned up approximately 11.4 grams of heroin. The heroin was in a plastic bag in five strips, each of which contained twelve individual packets of heroin. Fields had obtained the heroin from Rahshone Burnett. After his arrest, Fields called Burnett and said the heroin had been seized. He also asked Burnett to arrange for guns to be dropped off to the police in exchange for Fields's freedom by leaving the guns in a certain trash can. Law enforcement officials then saw Burnett

driving others to that trash can, and the officials recovered guns from it.

A few weeks later, on September 29, 2009, video set up by law enforcement captured Burnett mixing heroin with a cutting agent in his basement and then, with Anthony Guerra's assistance, packaging the heroin into individual tinfoil packets. Cordell Davis left Burnett's home with the heroin, went to Central Park and Huron, and sold sixty tinfoil packets of heroin to an undercover officer. The heroin weighed a total of approximately 12.1 grams.

An indictment was filed in December 2009, and the case against Burnett went to trial several years later on four counts: conspiring to possess with the intent to distribute heroin, using a communication facility in furtherance of that conspiracy, possession of heroin with intent to distribute on September 5, 2009, and possession of heroin with intent to distribute on September 29, 2009. Burnett admitted at trial that he was involved in drugs but maintained his involvement was limited to buying and selling and that he was not part of a conspiracy. The jury agreed and acquitted Burnett on the conspiracy and use of a communication facility to further a conspiracy counts, and it found him guilty on the two individual distribution counts.

In addition to the drugs involved in Burnett's offenses of conviction, the government sought to have the drug sales alleged in connection with the conspiracy considered relevant conduct during sentencing. The government argued at trial that Burnett conspired with Richard Harrington and others to obtain and distribute wholesale quantities of heroin

from at least November 2008 until Burnett's arrest in October 2009.

The Presentence Investigation Report ("PSR") prepared by the United States Probation Office before sentencing deemed Burnett responsible for at least one to three kilograms of heroin. After increases for possession of a firearm, acting as a leader or organizer, and obstruction of justice, the PSR's calculation of an offense level of 40 combined with Burnett's criminal history category of I resulted in an advisory range under the United States Sentencing Guidelines of 292 to 365 months' imprisonment. A sentencing hearing took place on August 26, 2013. After hearing argument from both parties, the district court found Burnett responsible for 100 grams of heroin. The district court also declined to assess a four-level leader/organizer enhancement and instead assigned a two-level leadership increase. The district court concluded that Burnett had an offense level of 32. The resulting advisory guideline range was 135 to 168 months' imprisonment. The district court imposed a sentence at the low end of that range of 135 months' imprisonment.

In August 2011, Burnett was charged in a separate case with three counts of mail fraud in violation of 18 U.S.C. § 1341 and two counts of wire fraud in violation of 18 U.S.C. § 1343. Burnett's sister and infant nephew died in a fire, and a $5.75 million settlement was reached for the benefit of Burnett's sister's five surviving children. Burnett was appointed guardian of the minor children, which gave him access to settlement funds. He used portions of those settlement funds multiple times for his own gain, including by

buying himself a Bentley, a Mercedes, and jewelry. He also made several unauthorized disbursements of the settlement funds, including the purchase of a BMW and an apartment building. Burnett pled guilty to all five fraud counts. At sentencing, the district court imposed both the vulnerable victim enhancement and an enhancement for abusing a position of trust. After calculating an advisory guideline range of 78 to 97 months, the district court sentenced Burnett to 90 months' imprisonment.

We consolidated Burnett's appeals for briefing and disposition. In each appeal, he challenges the sentence he received.

## II. ANALYSIS

### A. Drug Quantity in Narcotics Case

Burnett first challenges the district court's determination at the sentencing in his drug case that he was responsible for 100 grams of heroin. It is undisputed that his counts of conviction involved approximately 33 grams of heroin. The position of both the PSR and of the government at sentencing was that Burnett was responsible for over one kilogram of heroin. The district court found Burnett responsible for 100 grams of heroin, and we review this finding for clear error. *United States v. Adams*, 746 F.3d 734, 739 (7th Cir. 2014).

When calculating a defendant's advisory guideline range, U.S.S.G. § 1B1.3(a)(2) provides that the base offense level is determined by taking into account "relevant conduct" which includes "all acts and omissions" committed by the defendant "that were part of the same course of conduct

or common scheme or plan as the offense of conviction." *See also United States v. Baines*, 777 F.3d 959, 963 (7th Cir. 2015). The "relevant conduct" provision in the guidelines allows sentencing courts to consider drug quantities that are not part of the offense of conviction, so long as "the unconvicted activities bore the necessary relation to the convicted offense." *Barnes*, 777 F.3d at 963 (quotation omitted). For offenses to be "part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." U.S.S.G. § 1B1.3 cmt. n.9(A). "Offenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." *Id.* at n.9(B). Factors in making the "same course of conduct" determination include "the degree of similarity of the offenses, the regularity (repetition) of the offenses, and the time interval between the offenses." *Id.* The government must establish relevant conduct by a preponderance of the evidence. *Baines*, 777 F.3d at 963.

The district court did not clearly err when it found Burnett responsible for 100 grams of heroin. Burnett took the stand at trial and testified in his own defense. He admitted that he ran a heroin business, and he admitted that he bought most of his heroin from Richard Harrington with the intent to sell it to Guerra, Fields, Davis, and others. Burnett testified that he began buying small quantities from Harring-

ton, and that the quantities he bought increased over time. Burnett further testified that he ultimately bought 100 grams of heroin from Harrington at one time that he resold to his heroin customers including Guerra, Fields, and Davis.

The district court based its 100-gram drug quantity finding on Burnett's admission at trial that he bought that amount from Harrington. In reaching this conclusion, the district court did not take up the government's invitation to find Burnett responsible for the conspiracy. The district court did, however, find him responsible for more than the 33 grams he was found guilty of selling, although it found a much lower quantity than the one to three kilograms requested by the government. Recognizing the government's arguments for a much higher quantity, the district court stated at sentencing, "although there are ways to come up with a much greater quantity … Mr. Burnett admitted to purchasing at least 100 grams." There is no question that the district court had evidence before it from which it could find that Burnett bought 100 grams of heroin.

And it was not clear error for the district court to find that the 100 grams of heroin Burnett admitted he purchased from Harrington was relevant conduct to the offenses of conviction. The court heard evidence demonstrating that Burnett's drug trafficking conduct was part of a single business and scheme. Burnett was convicted of possessing heroin with the intent to distribute it on two occasions, September 5, 2009 and September 29, 2009. The heroin seized on September 5 from Fields had been obtained from Burnett and was packaged for resale in individual user quantities,

and Fields was delivering it to the corner of Central Park and Huron. The government introduced evidence at trial that Burnett was organizing and supervising the sale of heroin on that corner by at least July 2009 and that he employed Davis to manage the corner. On September 29, video showed Burnett mixing and packaging heroin into individual user quantities. Burnett had bought this heroin from Richard Harrington and sold it to Davis, who was waiting while it was being packaged. Davis sold the heroin on September 29 to an undercover officer on the corner of Central Park and Huron.

The 100 grams of heroin for which the district court held Burnett accountable involved the same supplier, the same drug, the same purchasers, and the same continuous period of time as the conduct of conviction. Burnett admitted on the stand at trial that he regularly bought heroin from Harrington and distributed it to persons including Fields and Davis. Burnett did so from at least early 2009 through his arrest in October 2009, a period which overlaps with the September 5, 2009 and September 29, 2009 events that resulted in the convictions at issue. He also testified that he bought heroin from Harrington in July, August, and September 2009 "maybe once a week, maybe twice." Burnett said he initially bought smaller quantities of heroin from Harrington and then bought 100 grams on one occasion, and he admitted that he bought it during the course of his ongoing drug business and bought it with the intent to resell it. *Cf. United States v. Lomax*, 712 F.3d 1087, 1089-90 (7th Cir. 2013) (per curiam) (including in relevant conduct the amounts of regular drug

sales to customers even where the additional conduct involved purchases from different suppliers and sold at different locations because the sales were part of a "continuous pattern of drug trafficking").

The transactions also involved the same persons. Harrington was involved in the offense of conviction as Burnett's supplier, a connection which Burnett admitted when he acknowledged that he bought the September 29 heroin from Harrington. Burnett also admitted that Harrington supplied him with heroin for months, and that he sold heroin to the same people, including Guerra, Davis, and Fields. In addition, Burnett's admissions on the stand reflected that the September 9 events were far from his only interaction with Fields. Rather, he admitted he had sold to Fields from the spring to summer of 2009 and that the amounts increased over time. *See United States v. Farmer*, 543 F.3d 363, 373 (7th Cir. 2008) ("where the defendant's convicted offense was merely the latest drug sale in an unbroken series of deals regularly made, that is sufficient to find the defendant's prior drug transactions were part of the same course of conduct as the offense of conviction").

The unbroken period of time from the offense of conviction and the other counted conduct distinguishes Burnett's case from the cases to which he points us. In *United States v. Ortiz*, 431 F.3d 1035, 1041 (7th Cir. 2005), for example, the conspiracy that the government had argued was responsible for "relevant conduct" had been dismantled ten months before the defendant's conduct that led to his conviction. Similarly, we concluded in *United States v. Johnson*, 324 F.3d 875,

879-80 (7th Cir. 2003), that it was not the same course of con-
duct where the purported relevant conduct was separated
from the offense conduct by more than a year, involved dif-
ferent people, and involved different drugs. Here, however,
Burnett's involvement was continuous. We find no clear er-
ror in the determination that the 100 grams of heroin Burnett
bought from Harrington is relevant conduct to the offense
conduct.

Finally, Burnett contends that the district court failed to
adequately explain the reason for its conclusion that the 100
grams was relevant conduct. The sentencing transcript re-
flects that the district court attributed 100 grams to Burnett
based on Burnett's admission at trial that he had purchased
that amount from Harrington on a single occasion. This is
not a case where the record is devoid of evidentiary support
for the relevant conduct determination. *Cf. United States v.
Locke*, 643 F.3d 235, 245 (7th Cir. 2011); *United States v.
Sumner*, 265 F.3d 532, 540–41 (7th Cir. 2001). Nor is it a case
where the district court made no findings at all about the
drug amount for which it was holding the defendant re-
sponsible and instead only stated an offense level. *Cf. United
States v. Garrett*, 757 F.3d 560, 572–74 (7th Cir. 2014). While
more explanation could have been helpful, we find this case
similar to the circumstances in *Baines.* There, we said, "Alt-
hough the district court did not invoke the terms 'common
scheme or plan' or 'same course of conduct,' its considera-
tion of the testimony presented and the government's argu-
ments made at sentencing are sufficient to show it made the
relevant factual findings." 777 F.3d at 965; *see also United*

*States v. Williams*, 272 F.3d 845, 852 (7th Cir. 2001). The same is true here. As in *Baines*, we find no need to remand for further explanation. *See Baines*, 777 F.3d at 965.

### B. Leader/Organizer Enhancement in Narcotics Case

Burnett also appeals the district court's decision to impose a two-level enhancement after it found that Burnett acted as a leader or organizer in the drug case. We review the district court's imposition of an organizer or leader enhancement for clear error. *United States v. Purham*, 754 F.3d 411, 415 (7th Cir. 2014).

As with the drug quantity, both the PSR and the government had sought more than what the district court assessed. The PSR recommended that Burnett receive a four-level enhancement for leading and organizing an extensive drug enterprise, and the government requested a four-level enhancement as well. A four-level enhancement is proper under the guidelines where the defendant was "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a).

The district court, however, declined to assess a four-level enhancement and instead imposed a two-level enhancement. The guidelines provide that a two-level enhancement is appropriate where "the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b)." U.S.S.G. § 3B1.1(c). (Part (b), which is not at issue here, provides for a three-level enhancement where the defendant "was a manager or supervisor (but not an organizer or leader) and the criminal

activity involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(b)).

There was no clear error. A videotape played at trial and that is part of the record on appeal shows Burnett and Guerra mixing and packaging the heroin that would be sold in the September 29, 2009 transaction. Burnett can be heard on the video directing Guerra regarding what to do and how to package the heroin. Although Burnett argues that the video only shows Guerra packaging heroin for himself (Guerra), the district court did not commit clear error when it reviewed the videotape, considered Burnett's arguments, and concluded that Burnett was directing Guerra. A February 4, 2009 videotape further supports the district court's finding that Burnett acted as an organizer or leader over Guerra. There, Harrington and Burnett discuss a proposal for Harrington to give Burnett some free drugs in return for Burnett bringing Guerra to Harrington to test heroin. There was no clear error in the imposition of the enhancement.

### C. Vulnerable Victim and Abuse of Trust Enhancements in Fraud Case

Finally, Burnett argues that the imposition of both vulnerable victim and abuse of trust enhancements in his fraud case was wrong because, he maintains, the application of both enhancements in his case constituted impermissible double counting. We review a district court's application of the guidelines de novo and its factual findings for clear error. *United States v. Jumah*, 599 F.3d 799, 811 (7th Cir. 2010).

The guidelines provide for a two-level increase when a defendant "knew or should have known that a victim of the offense was a vulnerable victim." U.S.S.G. § 3A1.1(b)(1). The commentary to this provision states that a "vulnerable victim" is one "who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1(b)(1) cmt. n.2. Burnett does not contest that his sister's minor children were unusually vulnerable due to their age. The guidelines also provide for a two-level enhancement if the defendant "abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. Burnett also does not contest that he abused a position of trust in a way that significantly helped him commit fraud.

Although Burnett does not dispute that he was eligible for both enhancements individually, he maintains that imposing both on him in this case was wrong. In support, he points to Application Note 2 to U.S.S.G. § 3A1.1(b)(1), the vulnerable victim enhancement, which provides that the enhancement shall not apply "if the factor that makes the person a vulnerable victim is incorporated in the offense guideline. For example, if the offense guideline provides an enhancement for the age of the victim, this subsection would not be applied unless the victim was unusually vulnerable for reasons unrelated to age." From this Burnett argues that both the vulnerable victim and abuse of trust enhancements should not have been applied to him because, he maintains, both are predicated upon the same factor (age) that makes

the victims vulnerable. Therefore, he argues, he was wrongly punished twice for the same conduct.

We find no error in the imposition of both enhancements. We have ruled that "double counting," in the sense that the same conduct is used more than once to increase a defendant's guideline range, is generally permissible unless the text of the guidelines prohibits it. *See United States v. Vizcarra*, 668 F.3d 516, 519–20 (7th Cir. 2012). The concept of double counting is a matter of guidelines interpretation, and so traditional statutory construction principles apply. *Id.* at 519. Here, Application Note 2 to U.S.S.G. § 3A1.1(b)(1) only prohibits applying a vulnerable victim enhancement where the "offense guideline" incorporates the vulnerability. So, for example, when the offense was enticement of a minor, the Ninth Circuit ruled that the vulnerable victim enhancement would only apply if the minor was unusually vulnerable compared to other minors. *United States v. Nielson*, 694 F.3d 1032, 1035 (9th Cir. 2012); *see also United States v. Median-Argueta*, 454 F.3d 479, 482–83 (5th Cir. 2006) (ruling that where the crime is harboring illegal aliens, to receive the vulnerable victim enhancement the victims must be unusually vulnerable as compared to other illegal aliens). Here, the "offense guideline" is the fraud guideline, and it does not incorporate age into its guideline. Application Note 2 therefore does not help Burnett. He would like the principle of Application Note 2 to apply to other *enhancements*, not just to other *offense* guidelines, but that is not what the text of the note provides.

Burnett's argument fails for a more fundamental reason as well. The district court recognized that while there was some overlap in the facts that formed the bases of both enhancements, it reasoned, properly, that the two enhancements punished different aspects of Burnett's conduct. The district court applied the vulnerable victim enhancement because the victims were minors. It then applied the abuse of trust enhancement not only for Burnett's abuse of the trust placed in him as the minors' guardian and family member, but also for abusing the trust that the probate court placed in him when that court appointed him to be the minors' guardian. The two enhancements here punished different conduct, and there was no impermissible double counting.

### III. CONCLUSION

The judgments of the district court are AFFIRMED.