NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued March 2, 2016
Decided March 23, 2016

**Before**

DIANE P. WOOD, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 15-1568

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    *Plaintiff-Appellee*,<br><br>    *v.*<br><br>JUAN FRIAS,<br>    *Defendant-Appellant*. | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division.<br><br>No. 11 CR 881-1<br><br>Rebecca R. Pallmeyer,<br>*Judge*. |

**O R D E R**

Juan Frias appeals his 120-month sentence for possessing with intent to distribute over 100 grams of heroin, 21 U.S.C. § 841(a)(1). The district court determined that his relevant conduct included distributing much higher quantities—several kilograms of heroin and cocaine—than the 382 grams of heroin specified in the indictment, U.S.S.G. § 1B1.3(a)(2). The court also refused an adjustment for acceptance of responsibility because Frias denied distributing the additional quantities of heroin and cocaine, U.S.S.G. § 3E1.1(a). Frias challenges the district court's relevant-conduct and acceptance-of-responsibility determinations. We affirm.

The investigation into Frias began as part of the Drug Enforcement Administration's investigation into a cocaine-distribution ring in Michigan. One of the suspects, Miguel Reyes, told agents that he had been receiving kilogram-quantities of cocaine from Frias in Chicago for approximately one year. Reyes's partner, Samuel Lopez, did not know and had never met Frias, but he corroborated that he traveled with Reyes to Chicago to pick up the cocaine. Based on this information, agents obtained and executed a search warrant for Frias's house in December 2011. The search did not turn up any cocaine; however, after receiving a *Miranda* warning and signing a waiver of rights, Frias led agents to his garage and revealed the 382 grams of heroin, a digital scale, and a PVC pipe that he used to transport drugs.

According to two DEA agents, Frias spoke to them about the extent of his drug trafficking. Frias stated that the 382 grams of heroin was the remainder of a 500-gram supply he had received a month earlier. He told the agents that he had been receiving 300 to 500 grams of heroin every month since 2008. Additionally, on two to four occasions he had received kilogram-quantities of heroin. He had two suppliers, one of whom was Alfredo Soberanis,[1] and a single customer whom agents never identified.

Frias told the agents that he also had trafficked kilogram-quantities of cocaine over the past year. He specified that he sold 15 to 20 kilograms of cocaine within the past half-year, as well as multiple additional shipments of 2 or 3 to 5 kilograms. Soberanis was also his cocaine supplier, and Reyes was his only customer.

Frias entered a blind plea of guilty and admitted possessing the heroin found in his garage. But he disputed that additional drug quantities should be included as relevant conduct. Based on the agents' report of their interview with Frias, a probation officer recommended that, under § 1B1.3, the additional heroin and cocaine were part of a "common scheme or plan" as the charged offense, and gave a "conservative estimate" that Frias was responsible for distributing 13 kilograms of heroin and 20 kilograms of cocaine. The probation officer also recommended denying a reduction for acceptance of responsibility because Frias refused to be held accountable for the additional drugs.

In his sentencing memorandum Frias made both legal and factual challenges to the quantity of drugs listed in the PSR. Frias asserted that he could only be held accountable for the quantity of heroin charged in the indictment and to which he pleaded guilty. And he flatly denied "any role as a supplier of narcotics to Mr. Reyes or

---

[1] Soberanis's first name is variously stated in the record as Alfredo and Alberto.

his co-conspirators" in Michigan. He argued that the evidence of the additional drug dealing—based on the agents' accounts of his interview and partially corroborated by Reyes and Lopez—was unreliable.

At sentencing, the district court heard testimony from the two DEA agents who interviewed Frias. The agents testified consistently that Frias had admitted distributing the amount of heroin and cocaine listed in the PSR during the time frame identified in the PSR, to receiving both drugs from Soberanis, and to selling cocaine to Reyes. The only difference in the agents' testimony was the location where they first encountered Frias—one agent said Frias was first encountered in the garage, and the other said it was in the house. Defense counsel extensively cross-examined the agents about their investigation of Reyes and Lopez, Frias's fluency in English, and the circumstances of the interview with Frias—including that Frias did not initial the individual rights listed on the waiver form; he was not asked to give a handwritten statement; he did not sign the agents' interview report; and, after the interview, he spoke with his attorney and subsequently refused to cooperate.

Defense counsel argued that Frias had not made the statements to the agents. Frias did not testify or otherwise offer evidence that he did not make the statements or that the drug quantities the agents testified about were wrong. Frias did apologize "for all the bad actions," but stated that he "[didn't] agree with the agents about the statements." Defense counsel also argued that Frias should receive a reduction for acceptance of responsibility because he admitted responsibility for the heroin found in the garage.

The government countered that the agents credibly testified about their interview with Frias and that the additional drug quantities qualified as relevant conduct because they were part of the same course of conduct—Frias supplied kilogram-quantities of both drugs from his home in Chicago during the same time period and received the drugs from the same supplier. And given Frias's unsupported and "blatant[]" denial of his post-arrest interview with agents, the government urged the court to refuse a reduction for acceptance of responsibility.

The district court found it "not terribly plausible" that Frias was responsible for only the 382 grams of heroin found in the garage. Noting that Frias had not offered anything to rebut the government's evidence, the court adopted the heroin and cocaine quantities listed in the PSR and described by the agents. The court explained that the additional drugs were relevant conduct under the guidelines because the offenses

involved "the same type of conduct"—"the sale of narcotics"—and "the same people or persons," in particular the same customer. Because Frias refused to acknowledge this relevant conduct, the district court denied a reduction for acceptance of responsibility. Based on these determinations, the court calculated a total offense level of 34 and a criminal-history category of I (zero points), resulting in a guidelines range of 151 to 188 months. The court sentenced Frias to a below-guidelines sentence of 120 months' imprisonment followed by 4 years' supervised release.

On appeal Frias makes four challenges to the district court's relevant-conduct determination. First he argues that the district court clearly erred by basing its drug-quantity determination on unreliable agent testimony. He points to the agents' inconsistent testimony about where they first encountered Frias (in the garage or in the house), the agents' reliance on Reyes's and Lopez's information during their investigation, the agents' failure to corroborate Frias's alleged statements, and the "troubling" circumstances of the post-arrest interview—the lack of Frias's initials next to each right listed in the waiver form, the lack of a handwritten statement, and the lack of an opportunity for Frias to review and sign the agents' interview notes.

Although a drug-quantity determination must be supported by information that bears sufficient indicia of reliability, *see United States v. Etchin*, 614 F.3d 726, 738 (7th Cir. 2010), minor inconsistencies and a lack of corroborating evidence do not as a matter of law make a witness' testimony unreliable or incredible, *see United States v. Isom*, 635 F.3d 904, 907–08 (7th Cir. 2011); *United States v. Hernandez*, 544 F.3d 743, 746–47 (7th Cir. 2008). Here, the district court heard unrebutted, consistent testimony from two agents that Frias admitted distributing at least 13 kilograms of heroin and 20 kilograms of cocaine. Counsel vigorously cross-examined the agents on their investigation into Frias, Reyes's and Lopez's roles in their investigation, and the circumstances of the post-arrest interview. And Frias offered no evidence either that the agents fabricated his statements or that the content of his statements differed from that reported by the agents. The district court was thus entitled to credit the agents' testimony, which fully supported its conservative drug-quantity finding.

Next Frias argues that the government did not establish relevant conduct because it failed to show temporal proximity or regularity of drug sales. But under the "common scheme or plan" provision of the guidelines—as opposed to the "same course of conduct" provision—temporal proximity and regularity are not required. *See* § 1B1.3(a)(2), cmt. n.5(B); *United States v. Baines*, 777 F.3d 959, 963 (7th Cir. 2015); *United States v. Zehm*, 217 F.3d 506, 511 (7th Cir. 2000) (comparing the "distinct

concepts" of the "common scheme or plan" and "same course of conduct" formulations). Rather, the charged and uncharged conduct must be "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*." *Baines*, 777 F.3d at 963 (quoting § 1B1.3(a)(2), cmt. n.5(B)). Here, the same principal (Frias) received multiple kilogram shipments of both heroin and cocaine from the same supplier (Soberanis) and distributed the drugs from the same location (Frias's home) regularly (monthly heroin deals and multiple cocaine deals) during the same time period (within a year of his arrest). This is sufficient to show that the additional heroin and cocaine were part of a common scheme or plan and thus relevant conduct for sentencing purposes. *See* § 1B1.3 cmt. n.5(B)(i); *United States v. Burnett*, 805 F.3d 787, 792 (7th Cir. 2015) (drug sales were relevant conduct where they "involved the same supplier, the same drug, the same purchasers, and the same continuous period of time as the conduct of conviction"); *Baines*, 777 F.3d at 964 (drug sales were relevant conduct where they shared a common principal, "drug courier/accomplice," location, "stash houses, delivery points, delivery vehicles," and "supplier").

Third, Frias argues that the district court's explanation for finding relevant conduct—that both the charged and uncharged conduct involved narcotics and the same people, specifically the same customer—was insufficient. It is true that these statements by the district court, taken alone, would be problematic. The mere fact that Frias's conduct involved "the sale of narcotics" is insufficient to find that conduct relevant for sentencing. *See United States v. Purham*, 754 F.3d 411, 415 (7th Cir. 2014); *United States v. Ortiz*, 431 F.3d 1035, 1040–41 (7th Cir. 2005). And there was no evidence that Frias sold heroin and cocaine to the same customer. But these two statements do not show clear error because the district court is not required to explicitly describe the factors supporting its relevant-conduct determination as long as its consideration of witness testimony, the government's arguments at sentencing, and the PSR, is "sufficient to show it made the relevant factual findings" and "[n]othing more is required to understand the basis for the district court's [decision]." *Baines*, 777 F.3d at 965; *see United States v. Singleton*, 548 F.3d 589, 593 (7th Cir. 2008). Here the court considered detailed witness testimony, the government's argument, and the PSR—all describing multiple commonalities between Frias's heroin and cocaine distribution, as detailed above.

Frias also complains that this was a case of "the tail wagging the dog"—Frias was indicted for trafficking a relatively small amount of heroin but was sentenced based on a significantly larger quantity of heroin and cocaine. Frias is correct that the relevant-

conduct provision gives prosecutors a "fearsome tool" in drug cases; but as long as the drug quantity is based on reliable evidence, as it was here, we will uphold a relevant-conduct determination—even when it creates a large discrepancy between charged and uncharged drug quantities. *See United States v. White*, 519 F.3d 342, 347–48 (7th Cir. 2008).

Frias further challenges the denial of an acceptance-of-responsibility reduction. He argues that his "legitimate" challenge to the drug quantity should not have robbed him of a reduction for his "genuine[]" acceptance of responsibility, as shown by his early guilty plea and his expression of remorse. To receive a reduction for acceptance of responsibility, defendants are not required to "affirmatively admit relevant conduct beyond the offense of conviction," *United States v. Ghiassi*, 729 F.3d 690, 698 (7th Cir. 2013), and they may make good-faith challenges to relevant-conduct determinations; but they may not "attempt falsely to deny past activities," *Etchin*, 614 F.3d at 739. *See* § 3E1.1 cmt. n.1(A). Here, Frias, through counsel, denied distributing cocaine to Reyes, refused to acknowledge making a statement to agents, and contested the agents' testimony. Frias himself stated that he disagreed with the agents "about the statements," but he offered no evidence to support his position. Given his unsupported denials, the district court was justified in finding his arguments "not terribly plausible" and refusing to credit him for accepting responsibility. *See United States v. Gordon*, 495 F.3d 427, 431 (7th Cir. 2007) (no reduction for "frivolous," "non-specific objections to the loss amount in the face of overwhelming evidence"); *Zehm*, 217 F.3d at 516 (no reduction after "bare denials to counter the largely consistent stories of several witnesses").

Accordingly, we AFFIRM the district court's decision.